UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| JIMMY LEE EVERETT, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No.  CV411-150 |
| | ) | CR408-063 |
| | ) | CR607-031 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Jimmy Lee Everett moves for 28 U.S.C. § 2255 relief.  (Doc. 1.[1]) He asserts, *inter alia*, that he is entitled to resentencing based upon his attorney's ineffectiveness in failing to object to a United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(b)(10)(C)(i) enhancement for the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification.  (Doc. 1 at 4.)  The claim appears to have merit, but the Court requires additional information.

---

[1] Unless otherwise noted, citations are to the docket in Everett's civil case, CV411-150.  Additionally, page references are to the CM/ECF screen page rather than the referenced document's own internal pagination.

Everett was named in three federal indictments in 2007 and 2008. First, he was charged in December 2007 as one of 23 defendants who conspired to steal vehicles, change their identification numbers, and then sell them for a profit. *United States v. Patterson*, No. CR607-031, doc. 1. Specifically, he was indicted for conspiracy, trafficking in vehicles with altered identification numbers, trafficking in stolen vehicles, and possession of counterfeit vehicle titles. *Id.*, doc. 1; (Presentence Investigation Report ("PSI") ¶¶ 1-7).[2] Then, in April 2008, Everett was charged with 34 counts of bank fraud and one count of making a false statement to a federally insured institution. *United States v. Everett* ("*Everett I*"), No. CR408-063, doc. 1. That indictment related to his embezzlement of more than $200,000 from his employer, Thompson Pavement Markings, Inc. ("TPM"). *Id.*; (PSI ¶¶ 8, 93-97). In a superseding indictment in that case he was also charged with aggravated identify theft. *Everett*, No. CR408-063, doc. 15.) Finally, in May 2008, Everett was indicted for obstruction of justice for his attempt to concoct a story exculpating him and the other *Patterson* defendants

---

[2] The same PSI spanned all three cases.

from their misdeeds. *United States v. Everett* ("*Everett* II"), No. CR608-007, doc. 3; (PSI ¶ 9).

Everett pled guilty to count six of the stolen vehicle indictment, *Patterson*, No. CR607-031, doc. 1, charging him with trafficking in vehicles with altered identification numbers. *Id.*, doc. 448. He also pled guilty to one count of bank fraud in *Everett* I, No. CR408-63, doc. 21, and in return, the obstruction indictment, *Everett* II, No. CR608-007, was dismissed. In a consolidated judgment, the sentencing judge imposed 108 months' imprisonment on the vehicle trafficking count and 110 months on the bank fraud count, both to be served concurrently. *Patterson*, No. CR607-031, doc. 682; *Everett I*, No. CR408-063, doc. 33.

After unsuccessfully appealing, Everett filed the instant § 2255 motion.[3] In his fourth claim for relief, he contends that his attorney,

---

[3] Everett only appealed the vehicle trafficking portion of the sentence. He argued that it was both procedurally and substantively unreasonable. *United States v. Everett*, 368 F. App'x 952, 953 (11th Cir. 2010). Specifically, he contended that the district court erred in calculating the United States Sentencing Guidelines advisory sentencing range by considering the intended instead of the actual loss and by concluding that he was a "leader" of the conspiracy rather than a manager or supervisor. *Id.* at 953-54. The Eleventh Circuit affirmed, finding that the district court had not erred and that the sentence was reasonable. *Id.* at 954. Thereafter, Everett filed a timely 28 U.S.C. § 2255 motion presently under consideration.

Michael J. Classens, erred by failing to challenge a § 2B1.1(b)(10)(C)(i)[4] two-level enhancement in the embezzlement case. (Doc. 1 at 4.)

In early 2008, Vince Thompson discovered that Everett was embezzling money. (PSI ¶ 94.) Using a TPM business account at Sea Island Bank, Everett had deposited and withdrawn funds from numerous checks payable to TPM without TPM's knowledge.[5] (*Id.*) Based upon the creation of the Sea Island Bank account, the PSI assigned a two-level sentencing enhancement under U.S.S.G. § 2B1.1(b)(10)(C)(i), which applies when an offense involves "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." *Id.* Courts have regularly employed the enhancement where a defendant, without authorization, uses someone else's means of identification to obtain a

---

[4] Everett was sentenced under the 2008 version of the guidelines. (PSI ¶ 108.) The guidelines have since been amended and the relevant section has been moved to § 2B1.1(b)(11)(C)(i).

[5] He also advised vendors that he was purchasing the company from the Thompsons and encouraged them to pay him directly. (*Id.* ¶ 95.) In order to hide his activities, he generated false invoices to understate the company's income. (*Id.* at 28 ¶ 95.) He was assisted by Wendy Humphrey, the office manager. (*Id.* at ¶ 96.) She admitted to Colleen Thompson that she had taken at least $16,000 from the company, while Everett had taken far more. (*Id.*) In fact, Everett cost TPM more than $210,865.96. (*Id.* at 35 ¶ 99.)

bank account number, which qualifies as the "unlawfully" obtained second means of identification. *United States v. Simpson*, 283 F. App'x 747, 751 (11th Cir. 2008). Here, the probation officer reasoned that Everett had forged Colleen Thompson's signature in order to open the Sea Island Bank account and thus qualified for the enhancement. (PSI ¶ 94.)

Classens, however, vigorously objected, arguing that Thompson should have been aware of the account since she had executed the renewal note, signature card, and corporate resolution allowing it. (PSI objections.) He affirmatively stated that the allegations that the signature was forged were "utterly untrue." (*Id.*) The probation officer responded that Thompson adamantly denied that she had ever signed any signature card or other document authorizing the establishment of the account. (*Id.*) Accordingly, the probation officer again insisted that the enhancement was warranted. (*Id.*) The probation officer also denied acceptance of responsibility based upon Everett's refusal to admit that he forged Colleen Thompson's signature. (*Id.* ¶¶ 106-107.)

At sentencing, however, the government conceded that the signature card was not actually a forgery but was used inappropriately and that Colleen Thompson was not aware of the misuse. *Everett* I, No. CR408-063, doc. 43 (sentencing tr.) at 4. TPM had applied for a loan from Sea Island Bank. (Doc. 8 (gov't resp.) at 22-23 (agreeing with Everett's narrative).) In order to provide the loan, Sea Island Bank required the company to open an account. Thompson believed she was signing the signature card in order to open an account solely as a prerequisite to obtaining financing, but Everett intended to use the account to embezzle money from the business.[6] (*Id.*) This view of the events allowed Everett to receive credit for acceptance of responsibility, but the government still insisted that the two-point enhancement was warranted because the use of Thompson's signature was unauthorized and unlawful. *Everett* I, No. CR408-063, doc. 43 at 4-5.

---

[6] According to Everett, he "opened a corporate bank account . . . using a duly-executed corporate resolution that expressly authorized him to open that account, which was identified by number on the very same resolutions document (and in an accompanying , duly-executed signature card) that was authentically signed by other corporate representatives at a duly-called corporate meeting of officers and directors, in furtherance of the corporation's efforts to secure a corporate restructuring loan from the bank at issue." (Doc. 2 at 28-29.)

After receiving acceptance of responsibility, Classens failed to pursue this matter further at sentencing or on appeal. Everett contends this was error on Classens' part. The government disagrees, but its reasoning is far from clear. It insists that Thompson was unaware of the Sea Island bank account (doc. 8 at 24), but it also states that she had approved the opening of the bank account so that TPM could obtain funding from Sea Island Bank. (*Id.* at 23.) If Thompson knew of the account and authorized its creation, the Court cannot conceive of any reason why the enhancement should apply. The provision is meant to apply when a defendant obtains a means of identification *without* the victim's consent.[7]  See U.S.S.G. §

---

[7] In the government's brief, it seems to suggest that even if Everett was authorized to open the account, the enhancement is proper because he misrepresented the purpose of the bank account. (Doc. 8 at 23.) In other words, there were two purposes, one authorized (obtaining financing) and another unauthorized (embezzling funds). Since Everett intended to use the account to embezzle funds, his creation of the account for that purpose was unauthorized. (*Id.* at 23.) Hence, the enhancement applies. (*Id.*) It cites to *United States v. Lyle*, 239 F. App'x 529 (11th Cir. 2007), for the proposition that the enhancement applies where a defendant misrepresented the true purposes to which a means of identification would be used. (Doc. 8 at 23.) *Lyle*, however, is readily distinguishable.

2B1.1(b)(10)(C)(i) application notes. Hence, Classen's failure to further pursue the matter would constitute deficient performance. But if Everett secured the loan and then used the signature card to create an *extra* account without having been authorized to do so, the enhancement would almost certainly apply.

Since it is unclear from the papers and record exactly what transpired, the Court **ORDERS** the government to submit additional evidence and argument supporting its position pursuant to Rule 7 of the Rules Governing Section 2255 proceedings for the United States District Courts. It must do so within 30 days of the date of this Order. Any factual evidence should be in the form of sworn affidavits and/or

---

In *Lyle*, the defendant offered to help people with their tax returns in order to obtain their identifying information. *Lyle*, 239 F. App'x at 531-32. She then filed fraudulent tax returns showing that the victims were entitled to refunds, and then applied for refund loans, which necessitated the opening of fraudulent bank accounts. *Id*. The *Lyle* court held that a § 2B1.1(b)(10)(C)(i) enhancement was warranted because the defendant had used the victims' names and social security numbers for an unauthorized purpose *without their consent* in applying for fraudulent refund loans, which necessitated the creation of associated bank account numbers. *Id*. It appears that Everett's case is quite different. As best the Court can tell, Thompson authorized Everett to open a bank account with Sea Island Bank, though she did not authorize him to use the account for embezzlement. The issue, though, is not whether the embezzlement was authorized (it never is), but whether Everett used Thompson's signature to obtain a new form of identification (bank account number) without her consent. That appears to be what animated the enhancement. Hence, if he in fact did have her consent then the analysis changes here.

authenticated records.[8]  Upon receipt of these materials, Everett will have 30 days to admit or deny the correctness of the government's materials and to submit his own evidence in support of his version of the events.  *See* Rule 7(c) ("The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.").

**SO ORDERED** this 15th day of February, 2012.

```
                                    /s/ G.R. Smith
                            UNITED STATES MAGISTRATE JUDGE
                            SOUTHERN DISTRICT OF GEORGIA
```

---

[8] The Court will not entertain further argument on the matter of prejudice.  It rejects the government's contention that Everett cannot show prejudice because the modified sentencing range would overlap with the current sentence.  (Doc. 8 at 28-29.)  The sentencing judge here explicitly stated that Everett should be sentenced "slightly above the low end of the advisory guideline range."  *Everett* I, CR408-063, doc. 43 at 22.  If the sentencing range drops from 108-135 months to 97-121 months, as the government suggests, then the Court is satisfied that it is reasonably likely that the sentencing judge would have imposed a shorter sentence.