UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

JIMMY LEE EVERETT, )
)
Movant, )
)
v. ) Case No. CV411-150
) CR408-063
) CR607-031
UNITED STATES OF AMERICA, )
)
Respondent. )

**ORDER**

Jimmy Lee Everett has filed a motion for 28 U.S.C. § 2255 relief raising four issues. (Doc. 1.[1]) Upon an initial review, the Court determined that his fourth ground for relief appeared to have merit, so it ordered further briefing. (Doc. 13.) The parties have submitted their briefs (docs. 14, 15, & 16), so the case is ready to proceed.

## I. BACKGROUND

Everett was named in three federal indictments in 2007 and 2008. First, he was charged in December 2007 as one of 23 defendants who

[1] Unless otherwise noted, citations are to the docket in Everett's civil case, CV411-150. Additionally, page references are to the CM/ECF screen page rather than the referenced document's own internal pagination.

conspired to steal vehicles, change their identification numbers, and then sell them for a profit. *United States v. Patterson*, No. CR607-031, doc. 1. Specifically, he was indicted for conspiracy, trafficking in vehicles with altered identification numbers, trafficking in stolen vehicles, and possession of counterfeit vehicle titles. *Id.*, doc. 1; (Presentence Investigation Report ("PSI") ¶¶ 1-7).[2] Then, in April 2008, Everett was charged with 34 counts of bank fraud and one count of making a false statement to a federally insured institution. *United States v. Everett* ("*Everett* I"), No. CR408-063, doc. 1. That indictment related to his embezzlement of more than $200,000 from his business, Thompson Pavement Markings, Inc. ("TPM"). *Id.*; (PSI ¶¶ 8, 93-97). In a superseding indictment in that case he was also charged with aggravated identify theft. *Everett*, No. CR408-063, doc. 15. Finally, in May 2008, Everett was indicted for obstruction of justice for his attempt to concoct a story exculpating him and the other *Patterson* defendants from their misdeeds. *United States v. Everett* ("*Everett* II"), No. CR608-007, doc. 3; (PSI ¶ 9).

---

[2] The same PSI spanned all three cases.

Everett pled guilty to count six of the stolen vehicle indictment, *Patterson*, No. CR607-031, doc. 1, charging him with trafficking vehicles with altered identification numbers. *Id.*, doc. 448. He also pled guilty to one count of embezzlement in *Everett* I, No. CR408-63, doc. 21, and in return, the obstruction indictment, *Everett* II, No. CR608-007, was dismissed. In a consolidated judgment, the sentencing judge imposed 108 months of imprisonment on the vehicle trafficking count and 110 months on the bank fraud count, both to be served concurrently. *Patterson*, No. CR607-031, doc. 682; *Everett I*, No. CR408-063, doc. 33. Everett only appealed the vehicle trafficking portion of the sentence. He argued that it was both procedurally and substantively unreasonable. *United States v. Everett*, 368 F. App'x 952, 953 (11th Cir. 2010). Specifically, he contended that the district court erred in calculating the United States Sentencing Guidelines advisory sentencing range by considering the intended instead of the actual loss and by concluding that he was a "leader" of the conspiracy rather than a manager or supervisor. *Id.* at 953-54. The Eleventh Circuit affirmed, finding that the district court had not erred and that the sentence was

reasonable. *Id.* at 954. Thereafter, Everett filed this timely 28 U.S.C. § 2255 motion.

Everett claims that his retained counsel, Michael J. Classens, rendered ineffective assistance of counsel at both sentencing and on appeal by failing to properly contest four components of his combined PSI:

(1) the § 2B1.1 loss amount in the stolen vehicle case, which was overstated since it included vehicles that shouldn't have been counted and overvalued them in general;

(2) the § 3B1.1 leadership enhancement in the stolen vehicle case, since Everett acted only as a manager, not a leader;

(3) the § 2B1.1 loss amount in the embezzlement case, which was also overstated;

(4) the § 2B1.1(b)(10)(C)(i) two-level enhancement in the embezzlement case for the unauthorized transfer or use of any means of identification unlawfully to produce or obtain another means of identification, since he did not meet the enhancement's requirements.[3]

(Doc. 1 at 4.)

[3] Everett was sentenced under the 2008 version of the guidelines. (PSI ¶ 108.) The guidelines have since been amended and the relevant section has been moved to § 2B1.1(b)(11)(C)(i).

## II. ANALYSIS

Everett's briefs are rambling and at times difficult to follow. His primary brief in support of his § 2255 motion is disorganized, changes heading styles seemingly at random, and bleeds argument on one point into others. Nevertheless, the Court will address every contention made in his prolix 41-page brief. S.D. Ga. LR 7.1(a) ("Absent prior written permission of the Court, no party shall file any brief or legal memorandum in excess of twenty-five (25) pages in length.").

### A. Loss Amount in Vehicle Case

The PSI states that Everett was involved in the theft of 23 vehicles and the associated total intended loss was $803,419.39, although the actual loss was closer to $332,450.29. (PSI ¶ 90.) Since the total intended loss fell between $400,000 and $1,000,000, Everett received a 14-point offense level enhancement. (PSI ¶ 111.) According to Everett, Classens should have objected to the inclusion of some of the vehicles since the related transactions were entirely undertaken by

other conspirators, and he also should have objected to the district court's inflated valuation of the vehicles.[4]

In support of his effort to lower his guidelines offense level (by reducing the loss amount below $400,000), Everett first claims that the government promised to hold him accountable only for the vehicles which were "directly" attributable to him. (Doc. 2 at 19-20.) He argues

[4] On ineffective assistance of counsel claims the Court applies *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which created a two-part test for determining whether counsel performed ineffectively. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, the defective performance must have prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. It is generally appropriate to look to counsel's performance throughout the case in making such a determination. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, Everett must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008), *quoting Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

For the prejudice prong he must show that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

that he bears no responsibility for ten of the vehicles which his co-conspirator, Troy Edenfield, sold to Randall Chambers, since those transactions occurred without his direct involvement. (Doc. 2 at 19.) Six more were only arguably attributable, but he admits involvement in the remaining seven. (*Id.* at 19-20.)

The government correctly asserts that no such promise was memorialized in the record. Nothing was mentioned in his plea agreement (CR607-031, doc. 668), nor was it discussed at Everett's Rule 11 hearing. (CR607-031, doc. 826.) In fact, at the Rule 11 hearing Everett affirmed that no one had made him any promises outside those stated in the plea agreement. (*Id.* at 17.) Everett's position is further eroded by a tape recorded conversation with Edenfield where he admitted that he had direct knowledge of the sales from Edenfield to Chambers and others; Edenfield called him about every single car. (PSI objections.) In fact, Everett recalled during a proffer interview that he had cooperated to sell the vehicles to Chambers and had received an equal share of the profits for several of the vehicles. (PSI ¶ 71.) So

even if the government made such a promise, its definition of "direct involvement" would likely cover those transactions.

In response to the government's showing, Everett has shifted gears: He now asks the Court to take his word for it that even if the government made no such promise, Classens nevertheless conveyed it to him. (Doc. 11 at 12.) He thus suggests that his plea was not knowingly or voluntarily entered.[5] But the contention that he was promised some benefit not stated in the plea agreement is refuted by the record. He represented at the Rule 11 hearing that *no one* made him any promises not recorded in the plea agreement, neither Classens nor the government. (CR607-031, doc. 823 at 17.) His Rule 11 proceedings were careful and detailed. In the face of such a record, the Court need not tolerate any present contention that he swore falsely in open court. *United States v. Stitzer*, 785 F.2d 1506, 1514 (11th Cir. 1986) (citing *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975)). Nor would it tolerate any claim that he was simply mistaken at the earlier proceeding. The question was clear and Everett answered in

[5] In fact, in a follow-up declaration, Everett states that he was persuaded to accept the plea based upon Classens' representations on that score. (Doc. 5 at 3-4.)

the negative without hesitation. Such a contention would be utterly incredible in the face of the record as a whole and would still be subject to summary dismissal. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).[6]

Everett also contends that the vehicles were overvalued and Classens should have raised such a challenge.[7] (Doc. 2 at 22.) He states that the probation officer relied on misleading claim figures and otherwise failed to explain his methodology. (*Id.*) He asserts, utterly without supporting data, that the vehicle valuations were overstated by approximately 30 to 50 percent. (*Id.*) Even accepting that the vehicles were overstated by 50 percent, the total intended loss still comes in at just over $400,000. (*Id.*) Hence, this claim is a sure loser, for Everett simply cannot show any prejudice even if Classens rendered deficient performance. But Everett has not even met his pleading burden, since

---

[6] The Court also rejects his assertion that Ronnie Lee, a co-defendant, succeeded by raising essentially the same objection. (Doc. 2 at 16 n.5.) There, the government simply chose not to contest Lee's objection because it was unprepared and the objection ultimately did not change the Guidelines calculations. (CR607-031, doc. 741 at 28-30.)

[7] Classens did argue at sentencing that the actual loss amount should control rather than the intended loss amount, but the Court rejected that claim. (CR607-031, doc. 745 at 14-15, 20-21.) He preserved the claim on appeal. *Everett*, 368 F. App'x at 953-54. The Court of Appeals rejected it out of hand.

he has not provided any documentation showing "true" fair market value for any of the vehicles listed in the PSI. *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)) (no hearing, much less § 2255 relief, based upon self-serving and conclusory claims); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations).

Since Everett's claims are meritless, Classens did not render deficient performance for failing to pursue them. Consequently, Everett's first claim fails.

**B. Leadership Enhancement**

Next, Everett insists that he was not a leader in the criminal enterprise but merely a manager, and he thus did not deserve a four point enhancement under USSG § 3B1.1. (Doc. 2 at 25.) Classens, according to Everett, rendered deficient performance for failing to argue

the matter properly. (*Id.*) Everett cites the basic law on the issue, but he has not offered any facts suggesting that he did not deserve the leadership enhancement. Instead, he simply insists that Classens rendered deficient performance by failing to mount a successful challenge against the enhancement or preserve it through appeal. (*Id.* at 26-26.) As such, it is entirely conclusory and fails to state a claim for § 2255 relief. *See, e.g.*, *Caderno*, 256 F.3d at 1217.[8]

Moreover, Classens raised the issue on appeal, and the Court of Appeals explained:

> The record shows that Everett both participated in, and exercised authority over, nearly every aspect of the auto theft ring. Moreover, he failed to object to many of the factual findings underlying these points prior to or at the sentencing hearing. Having considered these facts and the factors set forth in the commentary to § 3B1.1, we conclude that the district court did not err in applying a four-level leadership enhancement for Everett's role in the auto theft ring.

*Everett*, 368 F. App'x at 954. To the extent Everett suggests that Classens could have better undermined the factual support for the

---

[8] Moreover, the factual narrative in the PSI cuts against him. Everett directed co-conspirators to steal vehicles back from purchasers in an insurance fraud scheme. (PSI ¶ 44.) He recruited accomplices, and was personally involved in the acquisition, sale, and alteration of 23 separate vehicles. (PSI ¶¶ 21-90.) He sold vehicles to knowing purchasers, and split profits with the other conspirators. (*Id.*)

enhancement, his argument is contradicted by the record, including his own admissions.[9] Consequently, this claim is without merit.

### C. Loss Amount in Embezzlement Case

Next, Everett contends that Classens rendered deficient performance by failing to raise proper objections to the loss amount in the embezzlement case.[10] (Doc. 2 at 27.) The PSI attributed him with a total loss amount of $210,865.96. (PSI ¶ 97.) As such, he received a 12 point USSG § 2B1.1(b)(1)(G) enhancement for a loss greater than

[9] Classens also challenged the enhancement with the probation officer assigned to the case. (PSI objections.) The probation officer rejected the assertion, explaining that Everett was one of the three primary figures in the enterprise, along with Leon Patterson and Troy Edenfield. (*Id.*) Patterson provided counterfeit titles and VIN decals, Edenfield sold and transferred most of the vehicles, and Everett contacted Bernard Aikens, Ronnie Lee, and Leon Patterson to arrange for vehicles to be delivered to Edenfield. (*Id.*) Both Edenfield and Patterson explained as much. Edenfield stated that Everett made arrangements for each of the vehicles he received to be delivered, and he affirmed in a tape recorded conversation with Edenfield that he knew of every vehicle moving through the enterprise, including vehicles sold to Champers and Valeriano Gapac. (*Id.*) He also assisted Woodard Lewis, John Fitzgerald Jones, John Allen Williams, and Barry McCoy in the acquisition of stolen vehicles, and he helped Williams dispose of vehicles after authorities began to investigate. (*Id.*) Given that there were five or more participants and Everett led the actions of at least one of the participants, the enhancement was proper. *United States v. Jiminez*, 224 F.3d 1243 (11th Cir. 2000).

[10] Everett, part owner of Thompson Pavement Marking, Inc. ("TPM") admittedly embezzled money by having customers make checks payable directly to him, which he either cashed for his own use or deposited into his personal checking account without TPM's knowledge. (PSI ¶¶ 93-97; *see* CR408-063, doc. 15 at 2 (indictment).) He also deposited checks in a Sea Island Bank business checking account that he opened in TPM's name. (*Id.*)

$200,000 but less than $400,000. (PSI ¶ 120.) Everett contends that $35,935.96 should have been excluded from the calculations, since the losses occurred before he had even set up the South Carolina Bank & Trust bank account through which the PSI reported that he had transacted the checks. (Doc. 2 at 27; PSI ¶ 97.)

The government no longer has access to the appropriate bank records, but it does not deny that a South Carolina Bank & Trust account was established after those particular checks were transacted. (Doc. 8 at 20-21.) It speculates, however, that Everett could have cashed the checks prior to opening the account, the payment could have been drawn on his customers' accounts at SCBT, or he may have fraudulently received and cashed cashiers' checks drawn by that bank in the course of the scheme. (*Id.*) More importantly, however, it puts Everett to his *Strickland* burden. As it points out, Everett has not suggested that the transactions were not fraudulent and were thus not properly counted towards TPM's total loss amount under § 2B1.1. Without some plausible explanation here, the Court cannot find that Classens' failure to challenge the attribution was prejudicial. In other

words, while the PSI might have contained mistaken information as to how the transactions occurred, it does not necessarily show that the transactions should not have been counted in the total loss amount. Absent some explanation from Everett suggesting that the money did not constitute ill-gotten gains from TPM, he cannot satisfy *Strickland*'s prejudice requirement. Hence, this claim also fails.

**D. Identity Theft Enhancement**

On this claim familiarity with the prior order (doc. 13) is presumed. The crux of the dispute boils down to one factual issue: if Colleen Thompson, Everett's business partner at TPM, had knowledge that Everett was opening a bank account at Sea Island Bank (an account he later used for embezzling) and signed the paperwork allowing its creation, then the USSG § 2B1.1(b)(10)(C)(i) enhancement does not apply, and Classens likely rendered deficient performance by failing to pursue the issue further at sentencing or on appeal. (*Id.* at 7-8.) On the other hand, if she signed the forms authorizing the account's creation under false pretenses arising from his deception, the enhancement would apply. (*Id.*)

The government has submitted an affidavit from Thompson stating that she had no knowledge that her signature was used to open the Sea Island bank account. (Doc. 14, doc. 14-1 (Thompson Aff.).) She admits, however, that she signed a deposit account agreement and corporate authorization resolution. (Doc. 14-1 at 4.) She states that she now sees the boxes for "new" and "checking" were checked and that the resolution allowed Everett to open any deposit account in the name of the corporation, but she states that she relied on Everett to describe the purpose of the documents and he lied to her, saying the bank simply needed the forms to update contact information. (*Id.* at 4-5.) Everett insists that she did know the true purpose of the forms and that she approved the opening of a checking account since one was required to obtain a loan the company sought. (Doc. 16 at 11-12.)

Since there is a fundamental conflict in this new evidence, the Court must hold a hearing on this matter. *Anderson v. United States*, 948 F.2d 704, 706 (11th Cir. 1991) (unless the record is adequate to show conclusively that the movant's contentions are without merit, the district court must conduct a hearing). In addition to resolving this

factual dispute, the Court will entertain further argument on whether the enhancement applies at all when the "means of identification" stolen belonged to a business rather than an individual. *Compare United States v. Hilton*, 2010 WL 2926055 at *1-3 (W.D.N.C. July 23, 2010) (collecting cases applying the enhancement where defendant stole a business's "means of identification), *with Alfano v. United States*, 592 F. Supp. 2d 149, 156-60 (D. Me. 2008) (suggesting that the enhancement did not encompass corporations).

## III. CONCLUSION

For the foregoing reasons, the undersigned will recommend that Grounds 1-3 be **DENIED** in the final Report and Recommendation to the district judge assigned to this case. Ground 4, however, requires a hearing. Under Rule 8(c) of the Rules Governing Section 2255 Proceedings, Everett is entitled to the appointment of counsel pursuant to 18 U.S.C. § 3006A(g) to represent him at the evidentiary hearing. The Clerk is therefore **DIRECTED** to prepare the necessary paperwork for appointment of counsel and to schedule a hearing on this matter. The parties are advised, however, that the hearing is limited to Everett's Ground 4 contentions. The Court will not entertain any argument or

testimony pertaining to any of movant's other allegations.

**SO ORDERED** this 26th day of June, 2012.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA